Kevin J. McInerney (SBN 46941)
kevin@mcinerneylaw.net
18124 Wedge Parkway #503
Reno, Nevada 89511
Tel: (775) 849-3811
*Attorney for Henderson and Lampkins*

James F. Clapp (SBN 145814)
jclapp@clapplegal.com
Marita M. Lauinger (SBN 199242)
mlauinger@clapplegal.com
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, CA 92011
Tel: (760) 209-6565
Fax: (760) 209-6565
*Attorneys for Henderson and Lampkins*

*Additional counsel on the next page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEMAH HENDERSON, TAQUONNA LAMPKINS, CAROLYN SALAZAR and TAMANA DALTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:11-CV-03428 PSG (PLAx)<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO SET TRIAL PLAN**<br><br>Date: October 16, 2017<br>Time: 1:30 p.m.<br>Judge: Hon. Philip S. Gutierrez<br>Court: 6A |

Raul Perez (SBN 174687)
raul.perez@capstonelawyers.com
Melissa Grant (SBN 205633)
melissa.grant@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Tel: (310) 556-4811
Fax: (310) 943-0396
*Attorneys for Salazar*

Mark A Ozzello (SBN 116595)
mark@ozzellolaw.com
THE OZZELLO PRACTICE
17383 West Sunset Boulevard, Suite A380
Pacific Palisades, California 90272
Tel: (844) 774-2020
Fax: (310) 454-5970
*Attorneys for Dalton*

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  The Kilby Decision ....................................................................................... 1

III. PAGA's Regulatory Purpose Trumps Manageability Concerns ................. 6

IV.  Plaintiffs' Trial Plan For Proving "The Nature of the Work
     Reasonably Permits The Use Of Seats" ...................................................... 8

     A.  Chase's Policy Is Not To Provide Seats To Tellers and Lead
         Tellers .................................................................................................. 8

     B.  The Tasks of Tellers and Lead Tellers Performed At Teller
         Workstations Feasibly Permit the Use of Seats .................................. 9

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Achal v. Gate Gourmet*, 114 F. Supp. 3d 781 (N.D. Cal. 2015) ............................................ 7

*Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123-24 (2014) ........................... 3, 6

*Brown v. Wal-Mart Stores, Inc.*, 651 Fed. Appx. 672 (9th Cir. 2016) .............................. 2, 3

*Cunningham v. Leslie's Poolmart, Inc.*, 2013 WL 3233211
 (C.D. Cal. 2013) ............................................................................................................... 7

*Echavez v. Abercrombie and Fitch*, CV 11-9754 GAF,
 2013 WL 7162011 (C.D. Cal. Aug. 13, 2013) ................................................................. 3

*Guaranty Trust Co. v. York*, 326 U.S. 99 (1945) ....................................................................... 7

*Henderson v. JPMorgan Chase Bank*, No. CV113428PSGPLAX,
 2013 WL 12126772 (C.D. Cal., July 10, 2013) ........................................................... 6, 8

*Hibbs-Rines v. Seagate Technologies, LLC.*, No. C 08-05430 SI,
 2009 WL 513496 (N.D. Cal. Mar. 2, 2009) ..................................................................... 8

*Plaisted v. Dress Barn*, No. 2:12-CV-01679-ODW,
 2012 WL 4356158 (C.D. Cal. 2015) ................................................................................ 3

*Sakkab v. Luxottica Retail N. Am.*, 803 F.3d 425 (9th Cir. 2015) ........................................ 7

*Zackaria v. v. Wal-Mart Stores*, 142 F. Supp. 3d 949 (C.D. Cal. 2015) ............................ 7

**STATE CASES**

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) ............................................. 3

*Arias v. Superior Court*, 46 Cal. 4th 969 (2009) ..................................................................... 3

*Heritage Residential Care, Inc. v. D.L.S.E.*, 192 Cal. App. 4th 75 (2011) ........................ 8

*Home Depot U.S.A., Inc. v. Superior Court*, 191 Cal. App. 4th 210 (2010) ..................... 6

*Iskanian v. CLS Transp. Los Angeles*, 59 Cal.4th 348 (2014) .......................................... 6, 7

*Kilby v. CVS Pharmacy, Inc.*, 63 Cal. 4th 1 (2016) ....................................................... *passim*

*Murphy v. Kenneth Cole Prods.*, 40 Cal.4th 1094 (2007) ................................................. 6

*Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953 (1997) ................................................ 7

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012) .............................. 3

**FEDERAL STATUTES**

28 U.S.C. § 2072(b) ............................................................................................................ 7

**STATE STATUTES**

Cal. Lab. Code § 22 ............................................................................................................ 8

Cal. Lab. Code §§ 2698 *et seq (Private Attorneys General Act of 2004)* ......................... 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On August 14, 2017, the Court stated its tentative ruling denying Plaintiffs' Motion to Set Trial Plan (the "Motion"), finding that the proposed trial plan did not adequately address the factors articulated by the California Supreme Court in *Kilby v. CVS Pharmacy, Inc.*, 63 Cal. 4th 1 (2016), that are relevant to the totality of the circumstances analysis for objectively determining whether "the nature of the work" of a defendant's employees "reasonably permits the use of seats." The Court asked Plaintiffs' counsel to explain more fully how Plaintiffs intend to address the *Kilby* factors in a representative trial of their seating claim under the Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code sections 2698 *et seq.*

Pursuant to the Parties stipulation, Plaintiffs hereby submit their Supplemental Brief in support of the Motion, which expands on the points made in Plaintiffs' Reply Re Trial Plan and further explains how they intend to address the *Kilby* factors at trial.

## II. The *Kilby* Decision

In response to the Ninth Circuit's certified questions concerning California's seating requirement, the California Supreme Court in *Kilby* held:

> (1) ***The "nature of the work" refers to an employee's tasks performed at a given location for which a right to a suitable seat is claimed**, rather than a "holistic" consideration of the entire range of an employee's duties anywhere on the jobsite during a complete shift.* If the tasks being performed at a given location reasonably permit sitting, and provision of a seat would not interfere with performance of any other tasks that may require standing, a seat is called for.
>
> (2) ***Whether the nature of the work reasonably permits sitting is a question to be determined objectively based on the totality of the circumstances. An employer's business judgment and the physical layout of the workplace are relevant but not dispositive factors.*** The inquiry focuses on the nature of the work, not an individual employee's characteristics.

> (3) The nature of the work aside, **if an employer argues there is no suitable seat available,** *the burden is on the employer to prove unavailability.*

*Kilby*, 63 Cal.4th at 8.

In rejecting the "holistic" test for determining whether the "nature of the work reasonably permits the use of seats," the Court explained:

> This *all*-or-nothing approach could deprive an employee of a seat because most of his job duties are classified as "standing" tasks, even though the duration, frequency, and location of the employee's most common tasks would make seated work feasible while performing them. ***There is no principled reason for denying an employee a seat when he spends a substantial part of his workday at a single location performing tasks that could reasonably be done while seated, merely because his job duties include other tasks that must be done standing.***

*Kilby*, 63 Cal.4th at 17 (emphasis added). "**The inquiry does *not* turn on the individual assignments given to each employee, but on consideration of the overall** *job duties performed at the particular location by any employee while working there*, **and whether those tasks reasonably permit seated work.**" *Id.* (emphasis added.)

Thus, in a companion case to *Kilby* (decided by the same Ninth Circuit panel) entitled, *Brown v. Wal-Mart Stores, Inc.*, 651 Fed. Appx. 672 (9th Cir. 2016), the Ninth Circuit affirmed the district court's order certifying the seating claim of Wal-Mart cashiers because "there was a common nature of work among the proposed class . . . Wal–Mart cashiers spent the majority of their time working at registers during the class period. . . and. . . the work done by cashiers at registers was generally the same across stores, register locations and configurations, shifts, and physical activities." *Id.* at 673-74. The panel further held that PAGA "does not require individualized penalty inquiries that would defeat the commonality or predominance requirements for purposes of class certification." *Id.*[1]

---

[1] That is because, unlike an employee's claim for damages or restitution caused by Labor Code violation, a PAGA claim is the state's claim for civil penalties only.

On the other hand, the *Kilby* Court made clear that examination of individual tasks in isolation is inconsistent with the flexibility envisioned by the reasonableness standard. *Kilby*, 63 Cal.4th at 18. Thus, when evaluating whether the "nature of the work reasonably permits the use of seats,"

> *courts must examine subsets of an employee's total tasks and duties by location, such as those performed at a cash register or a teller window, and consider whether it is feasible for an employee to perform each set of location-specific tasks while seated*. Courts

---

The "harm" or "injury" at issue is the harm to the public interest in "maximum compliance with the state labor laws." *Arias*, 46 Cal. 4th at 980. "PAGA actions . . . seek to vindicate the public interest in enforcement of California's labor law. The bulk of any recovery goes to the LWDA, not to aggrieved employees. . . .The employee's recovery is thus an incentive to perform a service to the state, not restitution for wrongs done to employees." *Baumann*, 747 F.3d 1117 at 1123 (2014).

Moreover, here, upon a finding that Chase violated Section 14(A) of Wage Order 4-2001, PAGA penalties ***are automatically triggered in fixed amounts per aggrieved employee on a per pay period basis—not per each instance in which individual employees were not provided seats***. *See* Cal. Lab. Code § 2699(f)(2). For that reason, "the individualized assessment necessary in a PAGA action would come nowhere close to the individualized and fact-intensive restitution calculations necessary under the UCL" *Plaisted v. Dress Barn*, No. 2:12-CV-01679-ODW, 2012 WL 4356158, *2 (C.D. Cal. 2015); *see also Echavez v. Abercrombie and Fitch*, CV 11-9754 GAF, 2013 WL 7162011, at *11 (C.D. Cal. Aug. 13, 2013)("'To hold that a PAGA action could not be maintained because the individual assessments regarding whether a violation had occurred would make the claim unmanageable at trial would obliterate' the very purpose of PAGA because 'every PAGA action in *some* way requires some individualized assessment regarding whether a Labor Code violation has occurred.'" (quoting *Plaisted*, 2012 WL 4356158*2 (italics in original)). In other words, if Plaintiffs prove their seating claim, PAGA penalties (in the statutorily prescribed amounts of $100 for the first violation and $200 for the second violation) are to be awarded for every teller or lead teller who was not provided a seat at a workstation at any time during a Chase two-week pay period.

Indeed, PAGA penalties in the statutorily prescribed amounts are "mandatory, not discretionary, [citation] a court may award a lesser amount than the maximum civil penalty ... based on the facts and circumstances of the particular case," [citation]. *Brown*, 651 Fed. Appx. At 674 (quoting *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008). But "even if the district court decides to reduce the mandatory civil penalty, section 2699(e)(2) calls for a case-wide (rather than individualized) inquiry." *Id.* (citing section 2699(a); *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012) (applying section 2699(e)(2) to reduce the civil penalty based on the facts of the case as a whole, as opposed to on an employee-by-employee basis).

PLAINTIFFS' SUPPLEMENTAL BRIEF RE TRIAL PLAN

> should look to the actual tasks performed, or reasonably expected to be performed, not to abstract characterizations, job titles, or descriptions that may or may not reflect the actual work performed. *Tasks performed with more frequency or for a longer duration would be more germane to the seating inquiry than tasks performed briefly or infrequently.*

*Id.* (emphasis added).

> [The *a*]*nalysis begins with an examination of the relevant tasks, grouped by location, and whether the tasks can be performed while seated or require standing. This task-based assessment is also balanced against considerations of feasibility*. . . This inquiry . . . involves a qualitative assessment of all relevant factors. . . The weight given to any relevant factor will depend upon the attendant circumstances.

*Kilby*, 63 Cal.4th at 19-21.

An employer's "business judgment as to whether the work should be performed while standing," is *not* controlling. *Id.* at 21. "[T]he relevant inquiry is whether the reasons for such judgment are 'legitimate or pretextual.'" *Id.* While "providing a certain level of customer service is an objective job duty that an employer may reasonably expect. . . 'business judgment' in this sense does not encompass an employer's *mere preference* that particular tasks be performed while standing." *Id*. (emphasis in original). Rather, the trier-of-fact must objectively evaluate an employer's expectations regarding customer service, whether employees need to stand while performing particular tasks, and "the quality and effectiveness of [their] overall job performance." *Id.* at 22. Employers may not "arbitrarily define certain tasks as 'standing' ones" or "undermin[e] the protective purpose of the wage order." *Id.*

Here, Chase will no doubt present evidence regarding its "business judgment" that tellers and lead tellers should stand when performing all their tasks, including those at teller workstations. But Plaintiffs' evidence (*see infra* § IV(B)) will show that Chase's "business judgment" as to customer service expectations is

at best arbitrary and subjective. In fact, it is belied by Chase's own 2010 Employee Opinion Survey, which contains comments from tellers, lead tellers, *and* customers advocating for seats at teller workstations. Plaintiffs will also submit testimony, photographs and the seating policies of other California banking institutions demonstrating that providing seats at teller workstations does not negatively impact customer service or overall job performance of tellers and lead tellers. In addition, Plaintiffs' anticipate that an expert survey of all Chase current and former tellers and lead tellers will further corroborate that the nature of the work performed at teller workstations reasonably permits the use of seats without reducing the quality of their overall job performance.

Likewise, "the physical layout of a workspace *may* be relevant in the totality of the circumstances inquiry," as it may inform *both* the employer's and employees' expectations with respect to job duties. *Id.* But "an employer may not unreasonably design a workspace to further a preference for standing or to deny a seat that might otherwise be reasonably suited for the contemplated tasks." *Id.* Further, "*evidence that seats are used to perform similar tasks under other, similar workspace conditions may be relevant to the inquiry, and to whether the physical layout may be reasonably changed to accommodate a seat*." *Id.* (emphasis added). Here, testimony of Chase's own 30(b)(6) designees, percipient witnesses, and Plaintiffs' ergonomic expert will show that the vast majority of Chase workstations do **not** require any modifications to accommodate seats, and the cost of modifying the tiny fraction of workstations that may require it will be modest and reasonable.

The *Kilby* Court concluded its opinion by stating that while it is plaintiffs' burden, "acting as private attorneys general" under PAGA, to prove that "the nature of the work reasonably permits the use of seats," "[a]n employer seeking to be excused from the requirement bears the burden of showing compliance is infeasible because no suitable seating exists." *Id.* at 23-24.

### III. PAGA's Regulatory Purpose Trumps Manageability Concerns

As this Court previously recognized, PAGA actions are fundamentally "law enforcement actions," not class actions. *Henderson v. JPMorgan Chase Bank*, No. CV113428PSGPLAX, 2013 WL 12126772, at *7 (C.D. Cal., July 10, 2013); *see also Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123-24 (2014) ("a PAGA suit is fundamentally different than a class action… A PAGA action is a civil enforcement action filed on behalf of and for the benefit of the state, not a claim for class relief.")  A PAGA action therefore does not need to meet class action requirements. *Id.* at 1122-23; *Iskanian v. CLS Transp. Los Angeles,* 59 Cal.4th 348, 381-82 (2014). Because the Legislature wanted "to achieve maximum compliance with state labor laws," it declared it "in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations." *Id.*

Moreover, a PAGA action "is a *representative* action on behalf of the state," wherein the plaintiff "represents the same legal right and interest as [the LWDA]—*i.e.*, the right to impose civil penalties on employers who violate California labor law. *Id.* at 387 (emphasis added).  "'Civil penalties are inherently regulatory, not remedial,' and are intended to secure obedience 'to statutes and regulations validly adopted under the police power.'" *Home Depot U.S.A., Inc. v. Superior Court*, 191 Cal. App. 4th 210, 225-26 (2010) (affirming the constitutionality of PAGA's civil penalty provisions). Statutes providing for recovery of civil penalties "for the protection of the public are . . . broadly construed in favor of the protective purpose, absent exceptional circumstances." *Id.* (applying rule to PAGA).  Further, "statutes governing conditions of employment are to be construed broadly in favor of protecting employees." *Murphy v. Kenneth Cole Prods.*, 40 Cal.4th 1094, 1103 (2007).

Although a trial court has the inherent authority to manage and control trials before it, that discretion should not be used in a manner that "conflict[s] with any

statute" or is "inconsistent with [the] law." *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 967 (1997).  And, while the Federal Rules of Civil Procedure and the Federal Rules of Evidence may be used to manage trials and discovery, "[s]uch rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).  And as a type of qui tam action, "PAGA is substantive for *Erie* purposes 'because it gives plaintiffs a "right to recover" in specified circumstances.'" *Zackaria v. v. Wal-Mart Stores*, 142 F. Supp. 3d 949, 956 (C.D. Cal 2015) (citing *Achal v, Gate Gourmet*, 114 F. Supp. 3d 781, 810 (N.D. Cal. 2015) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)); *see also Cunningham v. Leslie's Poolmart, Inc.*, 2013 WL 3233211, *7 (C.D. Cal. 2013) ("Since a plaintiff's right under PAGA to pursue a bounty through a representative action is closely analogous to a qui tam relator's right, ... an aggrieved employee's rights under PAGA should also be characterized as substantive."); *accord Iskanian*, 59 Cal.4th at 382 (holding that PAGA representative claims are "a type of qui tam action"); *Sakkab v. Luxottica Retail N. Am.*, 803 F.3d 425, 429 (9th Cir. 2015) (same).

      Moreover, holding that individualized issues "would make representative PAGA actions unmanageable, and therefore untenable, would impose a barrier on such actions that the state law enforcement agency does not face when it litigates those cases itself." *Zackaria*, 142 F. Supp. 3d at 959; *see also Iskanian*, 59 Cal. 4th at 388 ("importantly, a PAGA litigant's status as 'the proxy or agent' of the state [citation] is not merely semantic; it reflects a PAGA litigant's substantive role in enforcing our labor laws on behalf of state law enforcement agencies.")  Indeed, "[i]mposing such a requirement, found nowhere in PAGA itself . . . would 'obliterate [the] purpose' of representative PAGA actions." *Zackaria*, 142 F. Supp. 3d at 959.  "In short, the imposition of a manageability requirement—which finds its genesis in Rule 23—makes little sense in [the PAGA] context." *Id.*

      Thus, here, to the extent there are concerns regarding manageability, the

PLAINTIFFS' SUPPLEMENTAL BRIEF RE TRIAL PLAN

Court should endeavor to craft solutions that serve the public purpose of PAGA, which is to enforce and deter violations of the Labor Code. In doing so, the Court will advance the "remedial purpose" of the Labor Code, which is to "protect" employees and "to promote their health and welfare" in the workplace—which includes providing suitable seats where the nature of the work reasonably permits them. *Kilby*, 63 Cal.4th at 10, 14, 22. Ultimately, if Plaintiffs prove that Defendant JPMorgan Chase Bank ("Defendant" or "Chase") violated the California Labor Code by failing to provide suitable seats to the tellers and lead tellers that Plaintiffs assert at trial are aggrieved employees, then Plaintiffs will be able to argue that civil penalties on behalf of each aggrieved employee should be awarded under PAGA. If Plaintiffs cannot prove that Defendant failed to comply with California's seating requirement[2] as to those "aggrieved employees," then Plaintiffs will have failed to prove their case. *See Henderson,* 2013 WL 12126772, at *6 (citing *Hibbs-Rines v. Seagate Technologies, LLC.*, No. C 08-05430 SI, 2009 WL 513496, at *4 (N.D. Cal. Mar. 2, 2009)).

IV. **Plaintiffs' Trial Plan For Proving "The Nature of the Work Reasonably Permits The Use Of Seats"**

   A. **Chase's Policy Is Not To Provide Seats To Tellers and Lead Tellers**

Plaintiffs will present the testimony of Defendant's 30(b)(6) witnesses to prove Chase's corporate policy (albeit unwritten) and uniform practice throughout California not to provide seats to tellers and lead tellers, unless medically required.[3]

---

[2] California Labor Code section 22 defines a "violation" of that Code as the "failure to comply with any requirement of the code." Cal. Lab. Code § 22; *see Heritage Residential*, 192 Cal. App. 4th at 80 (citing Lab. Code § 22 and stating that "noncompliance with any Labor Code provision constitutes a violation").

[3] For example, Michael Andrews, Chase's 30(b)(6) witness on seating issues testified in deposition as follows:
> Q: Let me try to break it down. Does Chase have any policies or practices regarding tellers using seats while they're working?
> A: There's no written policy that we have -you'll find on that.
> Q: Is there an oral policy?

### B. The Tasks of Tellers and Lead Tellers Performed At Teller Workstations Feasibly Permit the Use of Seats

As *Kilby* instructs, the trier-of-fact's "[a]nalysis begins with an examination of the relevant tasks, grouped by location." *Kilby*, 63 Cal.4th at 19. "This task-based assessment is also balanced against considerations of feasibility." *Id.* at 20. Feasibility is assessed in terms "of whether providing a seat would unduly interfere with other standing tasks, whether the frequency of transition from sitting to standing may interfere with the work, or whether seated work would impact the quality and effectiveness of overall job performance." *Id.* at 20.

Plaintiffs will prove that the most common duties of tellers and lead tellers[4]

> A: There's an understanding, and... that our new builds and our branches That don't have seats shouldn't get seats.
> Q: Is this like urban folklore?
> A: No. It's a policy that we don't - our tellers-we don't provide seats \*\*\*
> Q: Okay. But there is no method for a Chase teller who simply wishes a seat but doesn't have -doesn't go through the medical authorization, there's no way that teller can get a seat?
> A: That's right, not in Chase. \*\*\*\*
> Q: So throughout the unit it states [sic- should be "United States"] Chase Does not provide any stools or seats for its tellers; is that correct - except a medical setting?
> A: That's true. There could be some exceptions somewhere that I don't Know about, but they would have had to do it in a way we just discussed.
> Q: That would be true of, not only tellers, but lead tellers as well?
> A: That's right.

(*See* Dkt. 114, Exhibit M.) Similarly, Linda Przybysz, Chase's 30(b)(6) designee on seats provided as a medical accommodation, testified that "retail [which runs the bank's branches] have a policy that they do not provide that [teller] position with a seat." (*See* Dkt. 114, Exhibit N). And Michael Meyer, Chase's designee on teller fixture configurations, testified that Chase does not provide tellers with seats unless medically necessary. (*See* Dkt. 114, Exhibit H).

---

[4] The most common teller and lead teller duties as described by Chase's 30(b)(6) designee are processing customer transactions by accepting deposits, cashing checks, and handling withdrawals. (*See* Dkt. at 90-3, 77:1-12, 78:12-18, 79:12-18.) According to that Chase designee, other less frequent teller and lead teller duties that require walking include retrieving official checks from the printer, serving as a vault custodian, escorting customers to a safety deposit box or personal banker, obtaining approval of particular transactions, reconciling night deposits, and servicing the branch's ATM machines. (Dkt.

are performed at teller workstations[5] and that these location-specific tasks could feasibly be done while seated without impacting the quality and effectiveness of their overall job performance.[6]

    Plaintiffs' evidence will include the following:

>(1) The testimony of Chase's three 30(b)(6) witnesses regarding the uniform job duties and tasks of tellers and lead tellers, the vast majority of which are performed at teller workstations; teller and lead teller's uniform core training; Chase's teller-seating analyses; Chase's

---

90-3 at 85:3-89:17.)

[5] There are three types of Chase teller workstations in Chase's newly constructed branches (a standard station, merchant business station, and ADA "accessible" station), and other teller stations in branches that Chase inherited—*e.g.*, former Washington Mutual ("WaMu") branches in which teller seats were provided before Chase took them over and removed them. All of Chase's teller stations, regardless of the branch layout, have relatively standardized configurations, as described by Chase's 30(b)(6) designee on that topic and depicted in Chase's own schematics. (Dkt. 90-3, Exhibits. 18-19; Dkt.90-3 at 11:7-12:10, 16:13-21, 19:9-21, 22:4-23:5, 39:1-12; 41:3-11, 69:1-14,73:3-74:7.) The "accessible" station is designed for both the customer and teller to be seated in wheelchairs. (*Id.*) And the standard and merchant business stations have adequate knee room for a teller to utilize a stool, according to Chase's 30(b)(6) designee on teller station configuration. (*Id.*) All Chase teller workstations are equipped with certain tools that tellers and lead tellers use in performing customer transactions, including a cash drawer, computer, PIN reader, card reader, sorting bins, scanner, and the validator (receipt printer). (Dkt 90-3, Exhibit 15 and 90-3 at 41:2-42:9, 44:19-45:12, 46:12-47:3, 47:16-48:5, 48:22-24, 49:11-20, 53:4-54:13).

[6] For example, a Chase 30(b)(6) designee testified in deposition that he had "no recollection" of any customer complaints or expressions of dissatisfaction arising from the fact that some tellers were provided seats at their teller workstation. (Dkt. 114-6 at 7:18-25.) Another 30(b)(6) witness testified that Chase provided tellers with seats for medical reasons and that those tellers were able to "continue their normal teller functions even though they ha[d] some temporary or permanent physical problem" requiring them to sit while performing teller duties at their workstations. (Dkt 90-4, at 9 (Depo page 55:16-56:1).) In addition, a Chase 30(b)(6) designee testified that Chase removed teller workstation seats that WaMu had provided its tellers when Chase took over WaMu's California branches. (Dkt. 114-7, Exhibit V (Depo page 115:5-24).)  And former tellers attested under penalty of perjury to having personal knowledge that many California banks and credit unions, such as Bank of America, Golden One, Union Bank, Citibank, among others provide teller workstation seats. (*See*, *e.g.*, Dkt. 90-4, Exhibit 5; Dkt. 90-5, Exhibits 6-10.)

policy and practice of providing seats for medical reasons; configurations of Chase's teller workstations and branches; Chase's removal of teller workstation seats at WaMu branches in California when Chase took them over; and Chase's own assessment that the quality and effectiveness of the overall performance of tellers who were provided seats for medical reasons were not negatively affected by performing their workstation tasks while seated;

(2) Chase's own documents (including, without limitation, teller and lead teller job descriptions and uniform training materials; workstation schematics and depictions of workstation equipment; Chase's 2010 Employee Opinion Survey (with comments by tellers, lead tellers, and customers concerning the use of seats at workstations), Chase's Teller Line Stools: 2010 Product Analysis (containing analysis of what seats could be used nationwide at Chase's teller workstations), and Chase's Teller Express Logs (which record details of all customer transactions performed by tellers and lead tellers);

(3) Photographs and videotapes of Chase's workstations and branches throughout California;

(4) Expert testimony, analysis, and a survey concerning the feasibility of providing seats to Chase tellers and lead tellers when performing workstation tasks, and objectively evaluating a bank's reasonable expectations regarding customer service and the affect providing teller workstation seats would have on customer service and the quality and effectiveness of tellers and lead tellers' overall job performance;

(5)  Ergonomic expert testimony and analysis showing the vast majority of Chase workstations can accommodate seating with **no** modifications, and the cost of modifying the small fraction of workstations requiring modification would be reasonable and modest;

(6) The testimony of Plaintiffs and other current and former Chase tellers and lead tellers concerning their job duties/tasks; their thoughts and experiences regarding performing workstation tasks while seated and whether workstation seats would interfere with the quality and effectiveness of their overall job performance, including their ability to satisfy Chase's customer service expectations; and whether they were previously provided seats when they worked as a teller/lead teller at the same branch for WaMu; and

(7) Percipient witness testimony, photographs, and seating policies of other California banking institutions that provide workstations seats.

## IV.   CONCLUSION

Because the *Kirby* paradigm for proving a section 14(A) seating claim in a PAGA law enforcement action requires objective evidence assessed under a reasonableness standard, Plaintiffs' seating claim is inherently manageable. Moreover, because Plaintiffs' Trial Plan adequately addresses the *Kilby* factors, Plaintiffs respectfully request that the Court grant their Motion to Set Trial Plan.

Dated: September 25, 2017

Respectfully submitted,
Kevin J. McInerney,

/s/Kevin J. McInerney
Kevin J. McInerney
*Attorney for Plaintiffs Henderson and Lampkins*

Dated: September 25, 2017

Capstone Law APC

/s/Melissa Grant
Raul Perez
Melissa Grant
*Attorney for Plaintiff Salazar*

Dated: September 25, 2017

The Ozzello Practice PC

/s/Mark Ozzello
Mark Ozzello
*Attorney for Plaintiff Dalton*

I, the filer of this document attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: September 25, 2017                    Capstone Law APC

                                                                        /s/Melissa Grant
                                                                         Raul Perez
                                                                         Melissa Grant
                                                                         *Attorney for Plaintiff Salazar*