1   MORGAN, LEWIS & BOCKIUS LLP
    CARRIE A. GONELL, SBN 257163
2   cgonell@morganlewis.com
    JOHN D. HAYASHI, SBN 211077
3   jhayashi@morganlewis.com
    ALEXANDER L. GRODAN, SBN 261374
4   agrodan@morganlewis.com
    JOEL M. PURLES, SBN 266208
5   joel.purles@morganlewis.com
    600 Anton Boulevard, Suite 1800
6   Costa Mesa, CA  92626-7653
    Tel:  714.830.0600
7   Fax:  714.830.0700

8   SAMUEL S. SHAULSON, *appearing Pro Hac Vice*
    sshaulson@morganlewis.com
9   101 Park Avenue
    New York, NY 10178-0060
10  Tel:  212.309.6000
    Fax:  212.309.6001
11
    Attorneys for Defendant
12  JPMORGAN CHASE BANK

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

16  KEMAH HENDERSON,                    Case No. 11-CV-03428-PSG (PLAx)
    TAQUONNA LAMPKINS, and
17  CAROLYN SALAZAR individually
    and on behalf of all others similarly   Hon. Philip S. Gutierrez
18  situated,

19              Plaintiffs,             **DECLARATION OF CARRIE A.
                                        GONELL IN SUPPORT OF
20         vs.                          DEFENDANT JPMORGAN CHASE
                                        BANK, N.A.'S OPPOSITION TO
21  JPMORGAN CHASE BANK; and            PLAINTIFFS' REQUEST FOR
    DOES 1 through 50, inclusive,       CLARIFICATION OF SCOPE OF
22                                      TRIAL**
                Defendants.
23

24

25

26

27

28

## <u>DECLARATION OF CARRIE A. GONELL</u>

I, Carrie A. Gonell, declare and state as follows:

1.      I am a partner with the law firm of Morgan, Lewis & Bockius LLP ("Morgan Lewis"), counsel of record for Defendant JPMorgan Chase Bank, N.A., ("Defendant" or "Chase").  I am licensed to practice law in the State of California and am admitted to practice before this Court.  I have personal knowledge of the facts set forth in this Declaration and I could and would testify competently thereto if called upon to do so.  I submit this Declaration in support of Defendant JPMorgan Chase Bank, N.A.'s Opposition to Plaintiffs' Request for Clarification of Scope of Trial.

2.      Attached as **Exhibit A** is a true and correct copy of the Reporter's Transcript of Proceedings for the Status Conference held before this Court in the above-captioned litigation on November 20, 2017.

3.      Attached as **Exhibit B** is a true and correct copy of the Reporter's Transcript of Proceedings for the Hearing held before this Court in the above-captioned litigation on October 20, 2017.

Executed on this 3rd day of January, 2018, at Costa Mesa, California.

_____/s/ Carrie A. Gonell_____
Carrie A. Gonell

# EXHIBIT A

1       UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3       HONORABLE PHILIP S. GUTIERREZ, U.S. DISTRICT JUDGE

4

5   KEMAH HENDERSON, TAQUONNA LAMPKINS,     )
    AND CAROLYN SALAZAR INDIVIDUALLY        )
6   AND ON BEHALF OF ALL OTHERS             ) CASE NO.
    SIMILARLY SITUATED,                     ) CV 11-3428
7                                           )
                    PLAINTIFFS,             )
8                                           )
            VS.                             )
9                                           )
    JP MORGAN CHASE BANK; AND DOES 1        )
10  THROUGH 50, INCLUSIVE,                  )
                                            )
11                  DEFENDANTS.             )
    _____)

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              MONDAY, NOVEMBER 20, 2017

17                  3:01 P.M.

18              LOS ANGELES, CALIFORNIA

19

20

21

22   _____

23          MAREA WOOLRICH, CSR 12698, CCRR
            FEDERAL OFFICIAL COURT REPORTER
24          350 WEST FIRST STREET, SUITE 4311
            LOS ANGELES, CALIFORNIA 90012
25             mareawoolrich@aol.com

1                 **APPEARANCES OF COUNSEL:**

2

3   **FOR THE PLAINTIFFS:**

4      CAPSTONE LAW APEC
     BY:  MELISSA GRANT

5      1875 Century Park East, Suite 1000
     Los Angeles, CA 90067

6

7      LAW OFFICES OF KEVIN J. MCINERNEY
     BY:  KEVIN J. MCINERNEY
     18124 Wedge Parkway, Suite 503

8      Reno, NV 89511

9      OZZELLO PRACTICE PC
     BY:  MARK OZZELLO

10     17383 West Sunset Boulevard, Suite A-380
     Pacific Palisades, CA 90272

11

12   **FOR THE DEFENDANTS:**

13      MORGAN, LEWIS & BOCKIUS LLP
     BY:  CARRIE A. GONELL

14     JOEL M. PURLES
     600 Anton Boulevard, Suite 1800

15     Costa Mesa, CA 92626

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, NOVEMBER 20, 2017

 2                             3:01 P.M.

 3                              -oOo-

 4

 5         THE CLERK:  Calling Item 8, Civil 11-3428, Henderson

 6  versus JP Morgan.

 7         Counsel, please state your appearances.

 8         MR. OZZELLO:  Good afternoon, Your Honor.

 9  Mark Ozzello representing the plaintiffs.

10         MS. GRANT:  Good afternoon, Your Honor.

11  Melissa Grant for the plaintiffs.

12         MR. MCINERNEY:  Kevin McInerney, Your Honor, for the

13  plaintiffs.

14         MS. GONELL:  Good afternoon, Your Honor.

15  Carrie Gonell for the defendant.

16         THE COURT:  Good afternoon.

17         I've read both the status statement and then the

18  defendant's response to the status statement.  I think I've

19  been through these issues many times, and I have just one

20  question, and that is why shouldn't I just set this case for

21  trial?  I think the time has come to set it for trial.

22         Anything from the plaintiff?

23         MR. MCINERNEY:  Your Honor, speaking just for

24  Henderson and Lampkins, the first paragraph of their Complaint

25  at paragraph 1, line 3, said that the plaintiffs were bringing
```

1    it as a class action and as a representative action.  Well,

2    it's clearly not a class action.  I don't know given the way

3    the law has evolved whether it ever could have been a class

4    action.

5              But the Court has considered certainly our

6    representative trial plan, and for the reasons that you've

7    clearly stated, you feel that the trial plan won't work, won't

8    satisfy it.  So it doesn't appear that we can go forward as a

9    representative action.  And, you know, if the Court were to

10   consider going forward with individual trials, I respectfully,

11   Your Honor, would decline to go forward.

12             MS. GRANT:  As would Plaintiff Salazar because there

13   is no -- we don't believe there is a right to an individual

14   PAGA seating claim.

15             THE COURT:  I guess the question becomes then how

16   does the case get resolved?  So if I just set it for trial, is

17   there a dismissal with prejudice, or is it a dismissal without

18   prejudice and -- Ms. Gonell?  I think you probably have

19   collateral concerns.

20             MS. GONELL:  I do, Your Honor.  And I guess I would

21   start by saying there remains a representative action in this

22   case with respect to the penalties alleged by the four named

23   plaintiffs as to themselves.  When we say representative

24   action, we mean people pursuing in the shoes of the state to

25   represent the state's interest.  The state can and does

1  represent the interest of --

2            THE COURT:  Right.  I read the --

3            MS. GONELL:  -- individuals or for people --

4            THE COURT:  The fact that I said I would set it for

5  trial, I agree with what you are saying.

6            MS. GONELL:  So it would be our position you could

7  set it for trial.  We think it would be improper for you to

8  dismiss the claims in the case without prejudice because all

9  that would do is open up collateral litigation on the issues

10 Your Honor has already decided.

11            THE COURT:  All right.  The matter stands submitted.

12 Thank you.

13            (At 3:05 p.m. the proceedings adjourned.)

14

15

16

17

18

19

20

21

22

23

24

25

1        CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5            I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME COURT

6    REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

7    CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

8    TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

9    IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

10   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

11   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

12   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

13

14

15            DATED THIS  7TH  DAY OF DECEMBER, 2017.

16

17

18       /S/ MAREA WOOLRICH
         _____
19       MAREA WOOLRICH, CSR NO. 12698, CCRR
         FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

# EXHIBIT B

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3    HONORABLE PHILIP S. GUTIERREZ, U.S. DISTRICT JUDGE

4

5    KEMAH HENDERSON, TAQUONNA LAMPKINS,    )
     AND CAROLYN SALAZAR INDIVIDUALLY       )
6    AND ON BEHALF OF ALL OTHERS            ) CASE NO.
     SIMILARLY SITUATED,                    ) CV 11-3428
7                                           )
                    PLAINTIFFS,             )
8                                           )
           VS.                              )
9                                           )
     JP MORGAN CHASE BANK; AND DOES 1       )
10   THROUGH 50, INCLUSIVE,                 )
                                            )
11                  DEFENDANTS.             )
     _____)
12

13

14

                 REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                     MONDAY, OCTOBER 16, 2017
16
                          1:35 P.M.
17
                    LOS ANGELES, CALIFORNIA
18

19

20

21

22   _____

23            MAREA WOOLRICH, CSR 12698, CCRR
              FEDERAL OFFICIAL COURT REPORTER
24          350 WEST FIRST STREET, SUITE 4311
             LOS ANGELES, CALIFORNIA 90012
25                 mareawoolrich@aol.com

```
 1                    APPEARANCES OF COUNSEL:

 2

 3     FOR THE PLAINTIFFS:

 4         CAPSTONE LAW APC
           BY:  MELISSA GRANT
 5         1875 Century Park East, Suite 1000
           Los Angeles, CA 90067
 6
           LAW OFFICES OF KEVIN J. MCINERNEY
 7         BY:  KEVIN J. MCINERNEY
           18124 Wedge Parkway, Suite 503
 8         Reno, NV 89511

 9         OZZELLO PRACTICE PC
           BY:  MARK OZZELLO
10         17383 West Sunset Boulevard, Suite A-380
           Pacific Palisades, CA 90272
11
12     FOR THE DEFENDANTS:

13         MORGAN, LEWIS & BOCKIUS LLP
           BY:  CARRIE A. GONELL
14         JOEL M. PURLES
           600 Anton Boulevard, Suite 1800
15         Costa Mesa, CA 92626

16

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 16, 2017

 2                            1:35 P.M.

 3                             -oOo-

 4

 5         THE CLERK:  Calling Item 8, Civil 11-3428, Henderson

 6    versus JP Morgan.

 7         Counsel, please state your appearances.

 8         MS. GRANT:  Melissa Grant on behalf of the

 9    plaintiff.

10         MR. MCINERNEY:  Kevin McInerney, Your Honor, for the

11    plaintiffs.

12         MR. OZZELLO:  Mark Ozzello for the plaintiff.

13         MS. GONELL:  Carrie Gonell, Your Honor, for the

14    defendant.

15         MR. PURLES:  Joel Purles for the defendant.

16         THE COURT:  The last time we were here I've since

17    released the Court's tentative ruling regarding the trial plan.

18    And since then I've reviewed the supplemental briefs that were

19    filed after the tentative was released.

20         Frankly, the briefs have not changed my view of the

21    trial plan.  But, Counsel, you maybe heard.

22         MS. GRANT:  Good afternoon, Your Honor.

23         There's a couple of points that I specifically want

24    to address.  One is we recognize that there are different

25    duties that the tellers and lead tellers do.  They kind of fall
```

1    into three or four categories.  That fact alone does not defeat

2    the manageability of a seating case because the issue, as the

3    *Kilby* case made very clear, is the tasks associated with a

4    given location and whether the common tasks associated with a

5    given location would reasonably permit seating in connection

6    with the frequency and duration of those tasks, in relation to

7    those tasks that have to be done while standing.

8              So the fact that there are tasks that have to be

9    done while standing or walking, for example, taking somebody to

10   the vault, does not mean that a teller or lead teller who is at

11   their workstation should not be permitted a seat while at the

12   workstation.

13             And we believe that the trial plan we submitted,

14   particularly the teller logs, will speak to the duration and

15   frequency of each task so that the Court will be able to

16   discern that the common tasks are those performed at the teller

17   workstations.

18             THE COURT:  But don't tellers -- there's lead

19   tellers and there's line tellers.  Aren't the tasks different

20   at each branch and sometimes they also assume other

21   responsibilities at each branch?

22             MS. GRANT:  Yes.  But that does not change the fact

23   that under the *Kilby* analysis, the fact the tasks that are

24   performed at the workstations -- and those are the only ones we

25   are talking about requiring a seat -- should not be provided a

**UNITED STATES DISTRICT COURT**

1    seat.

2             In other words, let's say there's a teller at a bank

3    that is assigned the job of walking customers to the vault.  We

4    are not saying that that teller should be provided a seat as

5    they are walking customers to the vault.  But there are other

6    tellers at the same time who are sitting at the workstation

7    doing tasks that could be done while seated.  That's what *Kilby*

8    stands for.

9             As a matter of fact, the quote is, "There's no

10   principled reason for denying an employee a seat when he spends

11   a substantial part of his workday at a single location

12   performing tasks that could reasonably be done while seated

13   merely because his job duties include other tasks that must be

14   done while standing."

15            So the issue is what are the common tasks sorted by

16   location, and can they be performed while seated without

17   interfering with the quality of performance of other tasks that

18   must be done while standing.

19            The other thing is in terms of the locations and the

20   configurations --

21            THE COURT:  Right.

22            MS. GRANT:  -- at this juncture we have not decided

23   how many of the locations we will actually prosecute for

24   violating the seating requirement.

25            THE COURT:  How can I proceed to trial if I don't

```
 1   know that fact?

 2            MS. GRANT:  Well, you would have to permit us some

 3   merits discovery, because at this juncture we can represent to

 4   you, as the government would, the state, if they were

 5   prosecuting the case, that they have enough information to know

 6   that many of the configurations of the banks would allow for

 7   seating and that they need additional discovery --

 8            THE COURT:  Prior to certification, what was the

 9   status of discovery?

10            MS. GRANT:  Well, it was certification discovery.

11   It was not merits discovery.  So it was whether or not there

12   were common predominant issues.

13            The Kilby case says --

14            THE COURT:  Wasn't the analysis -- even in the

15   certification stage, wasn't the analysis --

16            MS. GRANT:  I'm sorry, Your Honor.  I didn't hear

17   you.

18            THE COURT:  Let's assume for a moment it was simply

19   certification discovery.  That involves some analysis of the

20   various locations, doesn't it?  Why would additional discovery

21   be needed if -- it seems to me certification discovery would

22   have covered the various locations and we would be in a

23   position now to decide what locations are being prosecuted.

24            MS. GRANT:  Well, in all candor, when we were

25   presenting the certification case, we were presenting the
```

1    predominance of the common issues.  The fact that there may be

2    some other issues that aren't the predominant issues should not

3    have defeated certification.

4         And the thing about the location is, if we had

5    gotten too far into the merits of each configuration -- we did

6    go into the merits to some extent, and we determined that

7    they're primary configurations.  There are three according to

8    the 30(b)(6) deponent.

9         Now, they have since taken over other banks and

10   built other new branches since.  So we would need discovery

11   regarding those.  But the 30(b)(6) person testified to the

12   primary three configurations which would allow four seats.

13        The other thing is the defendant seems to confuse

14   the standard of totality of the circumstances with a holistic

15   approach.

16        THE COURT:  What's the difference?

17        MS. GRANT:  Well, a holistic approach, which the

18   Supreme Court rejected, is the approach that says you look at

19   the entire picture of the job duties of the tellers.  And if

20   any one of those duties needs to be done while standing, you

21   cannot provide a seat for other duties that could be done while

22   seated.

23        But that approach was expressly rejected.  And in

24   lieu thereof, the Court said you look at -- you begin the

25   analysis --

1          THE COURT:  Even if you are looking just for the

2     moment -- let's say we are just going to analyze the tellers'

3     seating arrangements.  So you are just saying, when a customer

4     walks up to the teller line and wants to deposit money or take

5     money out or whatever transaction that's going to happen,

6     whether you provide a seat or not for that particular task,

7     what happens if that teller just did it ten minutes and the

8     rest of the day they were doing assorted other activities at

9     different locations?  Doesn't the amount of other tasks impact

10    whether or not a seat can be provided under *Kilby*?

11          MS. GRANT:  Well, as the *Kilby* case said and as the

12    companion *Brown* case said, the analysis is not based on

13    individual tellers or cashiers.  The analysis is based on the

14    totality of the teller job.

15          THE COURT:  Right.  So if the totality of the job is

16    that this particular teller only works for ten minutes at the

17    teller line, doesn't that impact whether or not they have a

18    seat?

19          MS. GRANT:  But that particular teller, if they are

20    there for ten minutes, why can't they sit for ten minutes if it

21    doesn't interfere when they are assigned the vault or when they

22    are told at the end of the day to check the ATM or even when

23    they are told to go to the printer and pick up a check?

24          It is whether or not the frequency and duration of

25    these tasks would render the quality of the performance

1   deficient.  And there is no indication -- and we suggest to the

2   Court that we can present evidence that shows the quality of

3   the performance is not lessened by allowing them to sit even if

4   it's only ten minutes while they are doing the workstation

5   tasks.

6           Other banks all throughout California -- and we'll

7   present this evidence -- already provide seats for this

8   purpose.  As a matter of fact, Chase's branches that they took

9   over from WaMu provided seats for this purpose.  Some of our

10  own witnesses worked at the same branch when it was WaMu and

11  they had a seat.  Chase took over and ripped out the seats.

12          THE COURT:  I remember that because Mr. McInerney

13  reminded me at the very outset of the case that this case was

14  going to be really easy because JP Morgan had seats and then

15  Chase comes in and no seats.  I remember that fact clearly when

16  Mr. McInerney told me it was going to be easy, an easy case.

17          MR. MCINERNEY:  Never trust an Irishman.

18          MS. GRANT:  Other than that, other than the fact

19  that there are different tasks which can be grouped into the

20  workstation tasks, the walking customers to the vault or

21  escorting them to another bank person or the ATM in the

22  drive-through, the majority of tasks, the common tasks, are at

23  the workstation.

24          And their own diagram of the workstation and all the

25  equipment that a workstation contains demonstrates that those

1    tasks can be done while seated.  We believe that our trial plan

2    has presented that case to Your Honor.

3              I'd like to address any other questions that you

4    have.

5              THE COURT:  Let me hear from the bank.

6              MS. GRANT:  I do have one last question though.  If

7    you stand by your tentative, we would ask for direction as to

8    how you wish us to proceed.

9              THE COURT:  Okay.  So let's have that discussion,

10   because I'll take the matter under submission and look at it

11   one more time after I hear from Ms. Gonell.  But that's what I

12   want to address.  Now what?  Assuming -- if I accept the plan,

13   that's one thing.  If I don't accept the plan, that's the

14   discussion I want to have.  Now what are we going to do.  All

15   right.

16             MS. GRANT:  Thank you.

17             MS. GONELL:  Your Honor, just two points briefly.

18             So counsel for the plaintiffs have raised this issue

19   of what happens if there's someone who does a particular task

20   that you later determine could be performed seated ten minutes

21   a day, don't they get a seat.  Because they think they can

22   prove to you that the uniform tasks that are -- the quote

23   unquote "uniform tasks" are performed by tellers.

24             That's contrary to the findings you already made in

25   this case, and it's, frankly, contrary to the testimony of one

1    of their own lead witnesses who said what she did every day was

2    walk back and forth up the line all day long doing overrides

3    for other tellers.

4            Her experience may not be representative of the

5    experience of other people.  But the problem we have in this

6    case is exactly the problem Your Honor's tentative latches onto

7    which is she don't have the answer to that question without

8    looking at the individual circumstances of each teller.

9            And there's a reason that in three briefs to

10   Your Honor on this trial plan in this case, three separate

11   briefs from claimants, there's been no mention at all of two of

12   the *Kilby* factors that are precisely raised by Your Honor's

13   question.

14           One is the frequency and duration of sitting tasks

15   versus standing tasks, and the other is the transition between

16   those.  Now, if the hypothetical that plaintiffs were giving

17   you were accurate, then *Kilby* wouldn't be asking you to look at

18   the transition between those factors because it would be

19   irrelevant.  If there were any sitting tasks, then the decision

20   would be that a seat should be provided.

21           But the California Supreme Court has expressly said

22   that's not the analysis, that you do have to look at both types

23   of tasks that are performed by the employee and the relative

24   duration of each.

25           So we would submit that for all of the reasons set

1   forth in Your Honor's tentative, that this case cannot proceed

2   on a representative basis.

3            I would raise just one other issue for the Court,

4   and that is with respect to our request regarding abandonment.

5   I just want to clarify something that's in the tentative.

6            There's a statement in the tentative that indicates

7   that we have made a request for you to deem abandoned the

8   claims during the abatement period.

9            THE COURT:  Right.

10           MS. GONELL:  But that's actually not the request.

11  It has to do with claims after the abatement period.

12           So what counsel for the plaintiffs have said here is

13  that they now agree, pursuant to multiple orders from

14  Your Honor, that claims during the abatement period are not

15  going to proceed in this action or presumably anywhere else.

16           So now the question is with respect to the claims

17  that are currently pending in this action after September of

18  2013, what is the status of those claims?  And plaintiffs have

19  said we have no intention of proceeding with those claims that

20  are pending in this Court in this action because we are going

21  to proceed with those claims in our improperly filed state

22  court action Charles.

23           So the request to Your Honor is, look, they are not

24  permitted to split their claims in that way and decide that

25  they would prefer that claims pending before Your Honor get

1    adjudicated elsewhere in a case filed many years after this

2    one.

3            So I just wanted to clarify that for purposes of the

4    tentative, that the request that we made is not with respect to

5    the abatement period, but it's as to counsel for plaintiffs'

6    statements about the period following that to present.

7            THE COURT:  Okay.  So then the last question -- and

8    then I'll hear from plaintiffs' counsel and then I'll submit

9    it.  Assume the tentative stands.  Now what?

10           MS. GONELL:  And I'm happy to have a discussion

11    about that.  I think it would probably be fruitful for

12    plaintiff whose claims these are to be heard on that issue.

13           Our position would be, if counsel for the plaintiffs

14    are interested in litigating in this case the claims of their

15    individual representatives, we should set a short period for

16    discovery to do that and then proceed to trial.

17           THE COURT:  But the funniest question though is, if

18    they're from different locations, isn't joinder potentially

19    improper?

20           MS. GONELL:  Well, possibly.  I mean, it is

21    possible --

22           THE COURT:  How many named plaintiffs?  If there are

23    four different locations, is joinder even appropriate?

24           MS. GONELL:  And there's some question as to whether

25    or not joinder of the individual claims period is appropriate

```
 1    and what would happen as to each individual case.  But clearly
 2    those cases are currently pending before Your Honor and should
 3    be set for trial if counsel for plaintiffs are interested in
 4    pursuing them.
 5              THE COURT:  Okay.  Let me hear the last word from
 6    the plaintiff.
 7              MS. GRANT:  Your Honor, in terms of what's next,
 8    part of the problem here is -- and I'm going to have my
 9    colleague address the issue of the abatement period.  Part of
10    the problem is there's no such thing as an individual seating
11    claim.  The California Supreme Court has made it patently clear
12    that it's a representative claim on behalf of the state.  It's
13    the legal right and interest of the state.  It's not individual
14    aggrieved employee's claims.
15              THE COURT:  If the plan is rejected then, is the
16    case then ultimately dismissed?
17              MS. GRANT:  Well, perhaps defendant wants to bring a
18    motion dismiss.  I don't know.  If Your Honor is going to stand
19    by its tentative, it presents a conundrum.
20              THE COURT:  Right.  That's why I want your help.
21              MS. GRANT:  Well, perhaps we could invite defendant
22    to bring a motion to dismiss and proceed from there.  Or you
23    permit us to do the merits discovery to continue to fill out
24    our trial plan.
25              THE COURT:  Okay.  And then on abatement?
```

1          MS. GRANT:  You want to talk about abatement?

2          MR. MCINERNEY:  If I may, Your Honor.

3          THE COURT:  Sure.

4          MR. MCINERNEY:  I believe, Your Honor, that the

5    Ninth Circuit has made it clear and it was actually inherent in

6    this Court's decision about that period of time where penalties

7    were abated by stipulation that we are in charge of the ship

8    as -- the PAGA ship.  So we sort of determine who is on board.

9    And we are not pursuing the claims after that period when the

10   Ninth Circuit ruled.

11         THE COURT:  So I'm confused.  Are you conceding

12   abandonment?

13         MR. MCINERNEY:  No.

14         THE COURT:  Maybe I just misheard you.  I'm not

15   necessarily understanding.  So once the mandate comes down and

16   the abatement period is over, what's going to happen to the

17   claims that exist post abatement period?

18         MR. MCINERNEY:  Those are covered by a state case --

19         THE COURT:  All right.  So you are not abandoning

20   them.  You may pursue them in a state claim.  Ms. Gonell is

21   going to stand up and tell me why you can't do it.  Okay.

22   Everybody is on the same -- I got you.  Thank you.

23         MS. GONELL:  Your Honor, may I be heard for just a

24   second?

25         THE COURT:  And then let's wrap up.

1          MS. GONELL:  Just on one issue, Your Honor, with

2    respect to the individual PAGA claims, and this really ties

3    into exactly what Mr. McInerney was just expressing as well.

4          The cases that counsel for plaintiff is citing to

5    are in the arbitration context, and they deal with the question

6    of is there an individual claim that can be sent to arbitration

7    separate from representative claims if a representative claim

8    is appropriate.

9          That is a very different question than the one that

10   is currently before this Court with respect to the individual

11   claims.  There's no question that the state can and often does

12   proceed with litigation on individual claims.  They can

13   investigate a location and decide that they are pursuing the

14   claim of this person and not everyone in the location.

15         In fact, in my 20 years of practice, the most

16   frequent interactions I have with the agency are on individual

17   claims.  They've done opinion letters in the seating context on

18   individual employee's claims.  So while there may be

19   arbitration issues because it is the state's claim, as the

20   state, they certainly can and --

21         THE COURT:  So your answer would be just to set it

22   for trial?

23         MS. GONELL:  Yes.

24         THE COURT:  Set the four cases -- the five cases for

25   trial?

1          MS. GONELL:  Absolutely, Your Honor.

2          THE COURT:  Okay.  Thank you.

3          MS. GRANT:  Your Honor, may I be heard on that point

4   just briefly?

5          THE COURT:  Well, it's not going to be the last

6   word.  I think what I'm probably going to do is after I issue

7   the order, I'll have both sides meet, and we'll set a plan.

8   I'm not going to set a plan today after the denial.  I'll ask

9   you to meet and confer and then argue this point in writing to

10  me.  Okay?  All right.  Thank you.

11          (At 1:54 p.m. the proceedings adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5              I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME COURT

6   REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

7   CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

8   TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

9   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

10  REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

11  THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

12  REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

13

14

15              DATED THIS  14TH  DAY OF NOVEMBER, 2017.

16

17

18              /S/ MAREA WOOLRICH
                _____
19              MAREA WOOLRICH, CSR NO. 12698, CCRR
                FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**